UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**WILLIAM F. SHEA, LLC, et al.,**

      **Plaintiffs,**

v.

      Case No. 2:10-cv-615
      Judge Gregory L. Frost
      Magistrate Judge Norah McCann King

**BONUTTI RESEARCH, INC.,**

      **Defendant.**

## OPINION AND ORDER

This matter is before the Court on Plaintiff William F. Shea, LLC's Motion for Additional Discovery, to Modify the Case Schedule, and for Sanctions (ECF No. 119) and Defendant Bonutti Research, Inc.'s Brief in Opposition (ECF No. 131). Also before the Court are Defendant's Motion to Strike Plaintiff's Motion (ECF No. 122) and Plaintiff's Memorandum in Opposition thereto (ECF No. 129). Also before the Court is the parties' joint motion for an extension of time to file motions in limine. (ECF No. 124.)

For the reasons set forth below, Defendant's motion to strike is **DENIED**, Plaintiff's motion is **GRANTED IN PART AND DENIED IN PART**, and the parties' joint motion to extend time for motions in limine is **TERMINATED AS MOOT.**

### I. Background

In this lawsuit, Plaintiff William F. Shea, LLC ("Shea") seeks to recover commissions allegedly due him for six transactions he negotiated on behalf of Defendant Bonutti Research, Inc. ("BRI"). Shea claims entitlement to unpaid commissions, calculated as a percentage of royalties that BRI earns from the transactions. The dispute before the Court on Shea's motion centers around a transaction in which BRI sold the royalty streams at issue to Acacia Research

Group LLC ("Acacia"). The Acacia transaction closed on June 8, 2012, more than three months after the discovery deadline in this case. Even though BRI produced documents relating to the Acacia transaction to Shea just one week after the deal closed, Shea contends that BRI should have produced discovery on the Acacia deal (and other potential transactions affecting royalties) much earlier.

On January 23, 2012, Shea's counsel took the deposition of Dr. Peter Bonutti. In response to a question asking if BRI "had anyone do a valuation of [his] projected royalties from the patents held by any of [his] companies," Dr. Bonutti responded—

> Yes, I've been approached by a company called Acacia. They're very interested in licensing major portions of my patent portfolio. At this stage they're assessing values of it. This has been an ongoing process, and they have attributed substantial value to many of these technologies, and we are in the point of some concrete proposals.

(Bonutti Dep. 125, ECF No. 119 Exh. 7.) Dr. Bonutti also testified that two other companies, Biomet and Stryker, had also approached him about his patent portfolio and that he had been approached three years earlier. (*Id.*)

A few days after Dr. Bonutti's deposition, Shea served its third set of document discovery requests under Fed. R. Civ. P. 34, seeking valuations of BRI's intellectual property and projections of future royalty streams. The relevant requests were worded as follows---

> All reports, draft reports, correspondence, and other documents regarding any valuations made by BRI or any third party . . . of BRI's technologies, intellectual property, or patents, including but not limited to those licensed to third parties.

> All reports, draft reports, correspondence, and other documents regarding any projections made by BRI or any third party . . . of the future royalties or other income that BRI expects to earn on its technologies, intellectual property, or patents, including but not limited to those licensed to third parties.

(Pl.'s Doc. Request Nos. 83 and 85, ECF No.119 at Exh. 26.) Approximately two weeks after

Dr. Bonutti's deposition, Shea's counsel also wrote to BRI's counsel, asking BRI to supplement its responses to Shea's interrogatories and document requests. Shea's counsel did not, however, specifically refer to supplementation required as a result of Dr. Bonutti's testimony.

By agreement of the parties, BRI served its written responses to Shea's third set of document requests on March 16, 2012, approximately two weeks after the March 1 discovery deadline. BRI stated in its written response that it had "received offers to purchase or license substantial portions of BRI's patent portfolio and to assign BRI's rights under various license agreements." (Def.'s Resp. To Doc. Request Nos. 83 and 85, Pl.'s Mot. Exh. 27, ECF No. 119.) BRI qualified its response by further stating it did not consider these "arm's length offers" to be responsive to Shea's document request because they did not constitute a "valuation" or a "projection of future royalties or other income that BRI expects to earn on its technologies, intellectual property, or patents" that are at issue in this case. (*Id.*) Shea took exception with BRI's response: in a letter dated March 26, 2012, Shea's counsel considered the response "inadequate" because such information "is clearly relevant to the counterclaims of BRI that have been asserted in this case." (Pl.'s Mot. Exh. 31, ECF No. 119.) Though Shea emphasized the relevance of these documents, Shea did not respond to BRI's primary assertion that documents concerning offers made to BRI were not responsive to the requests Shea actually made in Document Request Nos. 83 and 85. Nonetheless, BRI later agreed to produce responsive documents despite its objections. (Pl.'s Mot. Exh. 32.)

The Acacia transaction closed on June 8, 2012. One week later, BRI provided Shea's counsel with copies of the executed agreement and related transactional documents. (Pl.'s Mot. Exh. 2.) Then, on July 16, 2012, BRI produced additional documents, including those relating to

3

the various monetary offers made by Acacia. (Pl.'s Mot. Exh. 28.) BRI also produced, for the first time, documents relating to an offer from the medical company Biomet to purchase one of the royalty streams at issue in this case; Biomet had made a draft proposal to Dr. Bonutti on March 7, 2012. (Pl.'s Mot. Exh. 8.) In its cover letter accompanying the documents, BRI expressed a willingness to cooperate on reopening discovery "on reasonable terms" in light of the fact that the Acacia transaction was not completed until after the close of discovery.

Two weeks later, Shea's counsel sent a letter to BRI's counsel after having completed review of the documents produced on June 15 and July 16, 2012. Shea took the position that BRI had improperly withheld documents relating to negotiations with Acacia, Biomet, and "possibly other third parties." (Pl.'s Mot. Exh. 34, at 1.) Shea sought BRI's consent to relief resembling what it seeks in the motion now before the Court. (*Id.* at 3.) BRI did not consent to any of the relief sought by Shea, disputing that it was under an obligation to produce documents before the Acacia deal was consummated. (Pl.'s Mot. Exh. 35, at 1-2.) BRI did, however, repeat its willingness to "ask the Court to reopen reasonable discovery" and to evaluate whether a continuance of the trial date was necessary. (*Id.* at 3.)

On August 8, 2012, Shea filed its motion now before the Court. (ECF No. 119.) BRI responded with a motion to strike Shea's motion on the grounds that Shea failed to pursue extrajudicial resolution or obtain consent under S. D. Local Rules 37.1 and/or 7.3. (ECF No. 122.) With the previously scheduled date of the final pretrial conference approaching, along with the concomitant deadlines for filing motions in limine, the parties jointly asked the Court for an order extending the time for filing motions in limine or, alternatively, for a telephonic status conference to address the case schedule and case management deadlines. (ECF No. 124.)

In response to the parties' joint motion, this Court convened a telephone status conference on August 23, 2012, after which it reopened discovery and modified the case schedule. (Order, ECF No. 130.)

## II. Discussion

### A. Defendant's Motion to Strike

BRI moves to strike Shea's motion on the grounds that Shea did not exhaust extrajudicial efforts at resolving the dispute before filing its motion. BRI invokes S. D. Local Rules 37.1 and 7.3 as the bases for its motion to strike. Neither ground, however, supports striking Shea's motion.

Local Rule 37.1 requires exhaustion of all "extrajudicial means" at resolving a dispute before filing a discovery motion. BRI contends that it made repeated requests to "meet and confer" regarding Shea's asserted need for additional discovery but that Shea instead "wasted weeks of valuable time" pursuing a motion for sanctions. (Def.'s Mot. To Strike 4, ECF No. 122.) BRI therefore argues that Shea did not make a good faith effort under Local Rule 37.1, justifying an order striking Shea's motion before the Court.

In the Court's view, however, Shea did not violate Local Rule 37.1. Under the circumstances, Shea satisfied any obligation required by the Rule given the time constraints presented. After reviewing the documents provided by BRI, the last of which were produced on July 16, 2012, Shea's counsel wrote to BRI's counsel on July 31, 2012, seeking agreement as to relief to which Shea thought it was entitled. When BRI did not agree, Shea filed the motion now before the Court. With an upcoming final pretrial conference and pretrial motion deadlines springing from that date, there was simply not enough time for the extended meet-and-confer

process that BRI seems to believe Shea was obliged to engage in.  Under the time constraints presented, the effort Shea made at extrajudicial resolution was all that was required under Local Rule 37.1.

Moreover, it is not entirely clear that Local Rule 37.1 applies here in the first place.  A party is not required to seek extrajudicial resolution when it is unlikely that the opposing party would agree to the relief requested.  *See Anderson v. Village of Obetz*, No. 2:05-cv-701, 2007 U.S. Dist. LEXIS 17762, at *14 (S.D. Ohio Mar. 12, 2007).  Here, Shea sought not only a reopening of discovery and a continuance of the trial date, but also sought sanctions in the form of, among other things, BRI bearing the expense of the reopened discovery.  Though Shea asked BRI in its July 31 letter if it would agree to all or part of the relief Shea wanted, the Court finds it highly unlikely that any opposing party would have agreed to many of the demands Shea made.  (And, indeed, BRI did not.)  Thus, even though the Court finds that Shea exhausted its obligation under Local Rule 37.1 in light of the unique circumstances presented here, the Court also observes that the rule may not have been implicated in the first place given the relief that Shea seeks here.

Nor is Local Rule 7.3 implicated.  Curiously, BRI invokes Local Rule 7.3(a), which requires parties to consult prior to filing "any motion for extension of time."  (Def.'s Mot. To Strike 4, ECF No. 122 (quoting S.D. Loc. R. 7.3(a)).)  But Shea's motion is not a "motion for extension of time."  Shea's motion is one to reopen discovery for a limited purpose, to reschedule case management dates, and for sanctions.  Local Rule 7.3(a) does not apply to such a motion.

For these reasons, BRI's Motion to Strike is **DENIED.**  Shea's motion is properly before

6

this Court.

### B. Plaintiff's Motion for Additional Discovery and to Modify Case Schedule

Plaintiff Shea's motion asks this Court to reopen discovery for 120 days to allow discovery into the Acacia deal (and other potential transactions) and to modify the case schedule accordingly, including the date for trial. In a telephone status conference held with the parties' counsel on August 23, 2012, the Court found good cause to reopen discovery for the limited purpose requested by Shea. (Order, ECF No. 130.) Accordingly, these branches of Plaintiff's Motion are deemed **GRANTED** by virtue of this Court's previous Order modifying the case schedule and allowing Shea to proceed with additional discovery. (*Id.*)

### C. Plaintiff's Motion for Sanctions

In addition to seeking additional discovery and modifications to the case schedule, Shea also asks this Court to levy sanctions against BRI for what Shea argues was BRI's failure to provide discovery of the Acacia transaction and other potential deals in a timely manner. Shea argues that BRI should have provided information and/or documents about the Acacia transaction and at least one other potential transaction (with Biomet) on at least three occasions prior to June 15, 2012, the date that BRI first provided Shea's counsel with the executed Acacia agreement and related transactional documents.

First, Shea argues that BRI should have disclosed the documents as a supplement to mandatory disclosures under Fed. R. Civ. P. 26(a). Second, Shea argues that the documents were discoverable as a supplement to Shea's first and second document requests under Fed. R. Civ. P. 34. Finally, Shea argues that BRI should have disclosed documents in response to Shea's third set of document requests served in January 2012 following Dr. Bonutti's deposition. Shea

7

therefore asks the Court to sanction BRI by (1) ordering BRI to pay the reasonable attorneys' fees and expenses incurred by Shea in filing the motion before the Court, (2) ordering BRI to bear Shea's expense in conducting the additional discovery, and (3) precluding BRI from relying upon the Acacia agreement in its opposition to Shea's pending motion for summary judgment. (Pl.'s Mot. 28-30, ECF No. 119.)

      The Court does not find sanctions warranted in this instance.  Based on the record before it, the Court does not find sanctionable conduct with regard to BRI's production of documents related to the Acacia transaction and negotiations with other parties.  Though Shea contends that it should have received various documents before the Acacia transaction closed, the documents of most relevance are the final documents from the Acacia agreement, which were not available until June 2012, long after the discovery deadline passed.  Even if BRI had produced documents pertaining to negotiations or exploratory communications on a piecemeal basis before the Acacia deal closed, BRI could not have produced the *final* transactional documents until the time it did so.  Thus, regardless of whether BRI had an obligation to produce discovery relating to offers or ongoing negotiations before the discovery deadline passed  (and this Court expresses no opinion on whether BRI had such an obligation), whether as supplemental disclosures or in response to Shea's third document request transmitted in January 2012, the parties would have found themselves in the same place they are now.  That is, BRI would have produced to Shea the *final* Acacia deal documents relatively soon after the Acacia deal closed, with the discovery deadline already having passed and with the final pretrial conference and trial dates approaching.

      Because BRI could not have reasonably produced the *final* Acacia transaction documents until the time that it did, the Court cannot discern prejudice to Shea from the so-called delay in

producing discovery related to the Acacia deal (and other potential deals).  Even if Shea had received everything it asked of BRI at the time Shea says it should have received it, Shea would have still had to ask this Court for an order continuing the trial date for the purpose of conducting discovery into the Acacia transaction.  And, ultimately, there has been no prejudice to BRI given that the Court has already modified the case schedule to allow Shea to pursue its discovery of the Acacia transaction and the Biomet offer.  (Order, ECF No. 130.)

Accordingly, Shea's motion for sanctions is **DENIED**.[1]

### III. Conclusion

For the reasons set forth above, Shea's motion for additional discovery, to modify the case schedule, and for sanctions (ECF No. 119) is **GRANTED IN PART AND DENIED IN PART.**  The discovery and case schedule are modified in accordance with this Court's previous Order (ECF No. 130), but Shea's motion for sanctions is denied.  BRI's motion to strike Shea's motion (ECF No. 122) is **DENIED**.  Finally, in light of the Court's previous order modifying the case schedule, the parties' joint motion for extension of time to file motions in limine (ECF No. 124) is **TERMINATED AS MOOT.**

**IT IS SO ORDERED.**

/s/ Gregory L. Frost
**GREGORY L. FROST**
**UNITED STATES DISTRICT JUDGE**

---

[1] Currently pending before the Court is a motion by BRI to supplement the record on Shea's motion for summary judgment with the Acacia agreement.  (Def.'s Mot. To Supplement, ECF No. 112.)  The parties should *not* interpret this Court's denial of Shea's motion for sanctions as a statement that it will allow the supplementation of the record that BRI has requested.  The Court will formally rule on BRI's motion in a separate order issued in due course.