UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**WILLIAM F. SHEA, LLC, et al.,**

       **Plaintiffs,**

v.

**BONUTTI RESEARCH, INC.,**

       **Defendant.**

          **Case No. 2:10-cv-615**
          **Judge Gregory L. Frost**
          **Magistrate Judge Norah McCann King**

## OPINION AND ORDER

This matter is before the Court on Defendant Bonutti Research, Inc.'s ("BRI") sealed motion to compel the return of certain privileged documents produced inadvertently during discovery. (ECF No. 139.) Also before the Court are Plaintiff William F. Shea, LLC's ("Shea") sealed memorandum in opposition to BRI's motion (ECF No. 141) and BRI's sealed reply in support of the motion (ECF No. 149). For the reasons set forth below, the Court **GRANTS** BRI's motion and **ORDERS** the return of the privileged documents cited in BRI's motion.

### I.  Background

In this lawsuit, Shea seeks recovery of commissions allegedly due for certain transactions negotiated on behalf of Defendant BRI. Shea claims entitlement to unpaid commissions, calculated as a percentage of royalties that BRI earns from the transactions. In May 2012, various entities related to BRI reached agreement with Acacia Research Group LLC ("Acacia") to assign approximately 175 Bonutti patents as well as certain license agreements that are at issue in this litigation. The transaction closed on June 8, 2012. Shea contends that this transaction included royalty streams from which it is entitled commissions.

1

In August 2012, this Court ordered discovery reopened for the limited purpose of allowing Shea to obtain information related to the Acacia transaction. Pursuant to the Court's order, Shea requested production of documents related to the Acacia transaction. In late September 2012, BRI produced more than 15,000 pages of documents relating to the Acacia transaction. In its cover letter provided with the documents, BRI's counsel stated: "To the extent any privileged communications are inadvertently included in this production as part of our effort to get these documents to you as quickly as possible, we expect they will be returned to us."

By letter dated October 5, 2012, less than a week after receiving BRI's document production, Shea's counsel notified BRI's counsel that BRI may have inadvertently produced privileged documents. More than three weeks later, on October 29, 2012, BRI notified Shea that it had discovered an inadvertent production of privileged documents. Ten days later, BRI's counsel identified eleven inadvertently produced documents in a letter to Shea's counsel, claiming that the documents were privileged under the "common interest doctrine." BRI requested the return of the documents. Shea responded on November 20, 2012, disputing the applicability of the "common interest doctrine" and refusing to return the eleven documents. BRI now moves to compel the return of the purportedly privileged documents under paragraph 15 of the Protective Order previously entered in this case. (ECF No. 23.)

**II.     Discussion**

The Protective Order in this case allows the producing party in discovery (here, BRI) to seek an order from this Court compelling the destruction or return of privileged materials inadvertently produced to the receiving party (*i.e.*, Shea). (ECF No. 23 at ¶ 15.) BRI invokes this provision, arguing that the eleven documents at issue are protected by the attorney-client privilege's "common interest doctrine."

The eleven documents at issue contain legal analysis of BRI's and Acacia's counsel regarding which of BRI's patent claims cover certain products in the marketplace. BRI argues that such analysis is covered by the attorney-client privilege. (ECF No. 139-1 at PAGEID# 6318.) *See, e.g., THK Am. v. NSK, Ltd.*, 917 F. Supp. 563, 566 (N.D. Ill. 1996). In opposing BRI's motion for an order compelling return of the eleven documents, Shea does not contest the notion that the attorney-client privilege applies to the documents. (ECF No. 141 at PAGEID# 6501.) Rather, even assuming that the documents would otherwise be protected by the attorney-client privilege, Shea contends that BRI waived any applicable attorney-client privilege by disclosing the documents to Acacia. (*Id.*)

As a general rule, the attorney-client privilege is waived by voluntary disclosure of otherwise privileged communications to third parties. *See In re Columbia/HCA Healthcare Corp.*, 293 F.3d 289, 294 (6th Cir. 2002). But BRI relies on the so-called "common interest" doctrine, which operates as an exception to the general rule that disclosure of privileged materials to a third party waives the privilege. *See Cooey v. Strickland*, 269 F.R.D. 643, 652 (S.D. Ohio 2010). This exception typically arises when parties "are either represented by the same attorney or are individually represented, but have the same goal in litigation." *Id.* Under such circumstances, the parties may freely share otherwise privileged communications with each other without waiving the privilege. *Id. See also Fresenius Med. Care Holdings, Inc. v. Roxane Labs., Inc.*, No. 2:05-cv-889, 2007 WL 895059 at *2 (S.D. Ohio Mar. 21, 2007). The purpose of the "common interest" doctrine is to permit persons with similar legal interests "to enjoy the same ability to communicate confidentially about their common interests with multiple attorneys that each client enjoys separately." *Id.* (citing *In re Regents of University of California*, 101 F.3d 1386, 1389 (Fed. Cir. 1996)). A communication is privileged under the common interest

3

doctrine "as long as it deals a matter on which parties have agreed to work toward a mutually beneficial goal, even if those parties are in conflict on some points." *Cooey*, 269 F.R.D. at 652.

BRI argues that the documents it asks to be returned fall squarely within the coverage of the common interest doctrine. Citing *Fresenius* and *Regents*, BRI argues that the doctrine is not necessarily limited to litigation situations; rather, the doctrine can apply in connection with patent rights. (ECF No. 139-1 at PAGEID# 6319.) In this case, BRI posits that its interests were closely aligned with Acacia despite the fact that they exchanged documents in the context of an arms-length negotiation regarding the price Acacia was to pay for certain patent-related assets of BRI. Both BRI and Acacia had an interest in the strength and scope of the patents that were the subject of the negotiations. Sharing that common interest, argues BRI, it was natural for the parties to want to exchange their respective analyses of potential patent issues. (ECF No. 139-1, at PAGEID# 6320.) Moreover, there was also a litigation component of the common interest calculus lurking beneath the negotiations between BRI and Acacia. Acacia contemplated prosecution of a patent infringement lawsuit that BRI had previously filed against another medical company. (*Id.* at PAGEID# 6322.)[1] Moreover, Acacia filed several infringement lawsuits based on certain BRI patents after it closed on the BRI deal in June 2012. (*Id.*)

For its part, Shea disputes the applicability of the common interest doctrine to situations in which parties exchanged otherwise privileged communications in the context of a commercial transaction. Relying principally on cases from other jurisdictions, Shea contends that the common interest exception does not extend to situations in which otherwise privileged materials are exchanged between adverse parties negotiating an arms-length business transaction. *See, e.g., Net2Phone, Inc. v. eBay, Inc.*, No. 06-2469, 2008 U.S. Dist. LEXIS 50451, at *24 (D.N.J.

---

[1] *Bonutti Research, Inc v. Fonar Corp.*, No. 2:11-cv-05907 (E.D.N.Y. filed Dec. 2, 2011).

June 26, 2008); *Katz v. AT&T Corp.*, 191 F.R.D. 433, 437-38 (E.D. Pa. 2000); *Baxter Travenol Labs., Inc. v. Abbott Labs.*, No. 84-c-5103, 1987 U.S. Dist. LEXIS 10300, at*7 (N.D. Ill. June 17, 1987).  Shea argues that because Acacia had no interest in BRI's patents until the Acacia-BRI transaction closed in June 2012, there could be no "common interest" in the any legal analysis having to do with those patents until after the closing date. (ECF No. 141 at PAGEID# 6503-04.)

Upon review, the Court finds that BRI has the better of the arguments.  This Court has held that the common interest doctrine applies, despite parties being in conflict on some points, so long as the privileged communications deal "with a matter on which parties have agreed to work toward a mutually beneficial goal." *Cooey*, 269 F.R.D. at 652.  And in particular to the patent context, this Court has also noted that the common interest doctrine is *not* limited to litigation situations.  *Fresenius*, 2007 WL 895059 at *3.  Indeed, in *Fresenius*, the Court observed that the "interest in obtaining a strong and enforceable patent is a legal interest which, although it furthers a commercial transaction, is also the proper subject of communications with attorneys for purposes of seeking and obtaining financial advice." *Id.*  Thus, *Fresenius* found that the common interest doctrine applied to attorney-client privileged documents that were exchanged between parties who were negotiating a purchase of patents and pending patent applications.  *Id.* at *2-3.

The applicability of the common interest doctrine to preserve the privilege attached to the documents at issue is even stronger in this case than in *Fresenius*.  The Court in *Fresenius* found that the common interest doctrine applied—preventing waiver of the attorney-client privilege—even though the parties "did not share legal documents out of some ephemeral concern that litigation might be instituted by some third party if they completed their asset purchase." *Id.* at

5

*3.  In this case, not only did Acacia and BRI share an interest in the existence of "strong and enforceable" patents, there were also a number of patents for which Acacia had an interest in either commencing or continuing litigation.

The documents at issue in this case relate directly to the patents that BRI was assigning to Acacia in connection with the parties' transaction that closed in June 2012.  Given the subject matter of the documents and the parties' shared interest in the patents being enforceable, the exchange of privileged documents in connection with those patents falls squarely within the common interest doctrine.

### III.   Conclusion

For the foregoing reasons, the Court **GRANTS** BRI's sealed motion to compel return of privileged documents (ECF No. 139).  Pursuant to paragraph 15 of the Protective Order (ECF No. 23) in this case, Shea shall, within five business days of the date of this Order, return or confirm destruction of the eleven documents at issue in BRI's motion, including all copies and summaries thereof and other materials solely derived from the privileged or protected materials.  (ECF No. 23, at ¶ 15.)

**IT IS SO ORDERED.**

> **/s/ Gregory L. Frost**
> **GREGORY L. FROST**
> **UNITED STATES DISTRICT JUDGE**