UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**WILLIAM F. SHEA, LLC, et al.,**

      **Plaintiffs,**

v.

**BONUTTI RESEARCH, INC.,**

      **Defendant.**

Case No. 2:10-cv-615
Judge Gregory L. Frost
Magistrate Judge Norah McCann King

## OPINION AND ORDER

This matter is before the Court on Plaintiff William F. Shea, LLC's ("Shea") sealed motion to compel production of certain documents in discovery (ECF No. 143), Defendant Bonutti Research, Inc.'s ("BRI") sealed memorandum in opposition (ECF No. 151), and Shea's sealed reply in support of the motion (ECF No. 152). For the reasons below, the Court **GRANTS IN PART AND DENIES IN PART** Shea's motion.

### I.  Background

Shea in this lawsuit seeks to recover commissions allegedly due for certain transactions negotiated on behalf of BRI. Shea claims entitlement to unpaid commissions, calculated as a percentage of royalties that BRI earns from the transactions. On June 8, 2012, BRI and Acacia Research Group LLC ("Acacia") completed a transaction in which Acacia acquired certain intellectual property rights from BRI. Shea has sought discovery related to the Acacia transaction as it relates to the damages Shea may recover in this case for BRI's breach of the consultant agreement that governed their business relationship.

In the motion before this Court, Shea moves to compel production of certain documents withheld by BRI, purportedly on the basis of the attorney-client privilege. Shea's motion focuses

1

primarily on certain spreadsheets compiled by BRI's Chief Financial Officer ("CFO"), which spreadsheets purport to reflect valuations of patent rights that were the subject of the BRI/Acacia deal. Shea also asks for in camera inspection of other documents withheld by BRI pursuant to the attorney-client privilege.

## II.     Discussion

### A.     Spreadsheets

Shea seeks to compel BRI's production of spreadsheets prepared by BRI's CFO, Randy Porter. BRI resists production of these documents, as the data entered by Porter onto the spreadsheets was, according to BRI, the product of legal advice covered by the attorney-client privilege. Specifically, BRI contends that Dr. Peter Bonutti asked BRI's in-house patent counsel, Michael Fluhler, to determine which BRI patents covered other companies' products and to estimate the value of BRI's patents going forward based on Fluhler's legal determination. BRI therefore argues that the spreadsheets at issue are "bound up" with Fluhler's legal determinations regarding the strength, application, and coverage period of the various patents that were covered by the Acacia transaction. (ECF No. 151 at PAGEID# 7048.)

The attorney-client privilege shields from discovery those communications made in confidence between client and attorney where those communications are made for the purpose of seeking or giving legal advice. *See Cooey v. Strickland*, 269 F.R.D. 643, 648 (S.D. Ohio 2010). The party asserting the privilege bears the burden of establishing its existence in order to shield communications from discovery. *Id.* (citing *United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 1999)). When a document contains both legal and other advice (*e.g.*, business or financial advice), the applicability of the privilege turns on whether the "predominant purpose" of the document was legal advice. *Id.* at 650 (quoting *Pritchard v. County of Erie (In re County of*

*Erie)*, 473 F.3d 413, 420 (2d Cir. 2007)); *see also Diagnostic Sys. Corp. v. Symantec Corp.*, No. CV-06-1211, 2008 U.S. Dist. LEXIS 123915, at *30 (C.D. Cal. Aug. 12, 2008).  If so, "all portions of the communications, including the non-legal considerations, will be protected." *Cooey* at 650.

Shea argues that the spreadsheets do not constitute "legal advice" and are therefore not shielded from disclosure.  Despite BRI's arguments as to the source of the figures appearing on the spreadsheets (*i.e.*, allegedly the product of legal advice given by BRI's patent counsel), the fact remains that the spreadsheets themselves contain only financial data and calculations; the documents at issue do not, on their face, contain legal advice.  And, Shea argues, "even if the numbers somehow 'reflect' legal advice, that advice was merely incidental to BRI's primary business purpose—to value its assets and calculate a sale price for the Acacia transaction."  (ECF No. 152 at PAGEID# 7103.)

BRI's privilege log in this case describes the spreadsheets as transcribing Fluhler's "legal advice."  But BRI does not dispute Shea's characterization of the spreadsheets (a characterization apparently based upon communications between counsel) as containing "just numbers," with no actual legal advice expressly appearing on the face of the documents.  (ECF No. 152 at PAGEID# 7106.)  The fact that Fluhler may have provided legal advice in the course of arriving at the valuation projections contained on the spreadsheet does not transform the spreadsheet itself into a privileged document.  As described by the parties, the spreadsheets' purpose was to show value of assets, not necessarily to communicate legal advice.

This is not to say that Shea is entitled to learn the contents of every communication that went into the creation of the spreadsheet.  Taking BRI's declarations from Bonutti, Fluhler, and Porter at face value, Fluhler arrived at certain values based on his legal analysis and advice with

3

respect to the strength, application, and coverage of BRI's patents. Shea is not necessarily entitled to discover the contents of communications between Fluhler and Bonutti that, for example, contain legal advice with respect to the strength of the patent claims, even though such communications might be connected to the valuations contained in the spreadsheets. But as for the spreadsheets themselves, the parties' description of them in their memoranda supporting and opposing Shea's motion to compel does not convince the Court that they should be withheld pursuant to the attorney-client privilege. By viewing these spreadsheets, Shea will learn information regarding the value placed on the assets; it will not learn the contents of attorney-client communications giving legal advice.

BRI has not met its burden of establishing the applicability of the attorney-client privilege with respect to the spreadsheets. The Court therefore grants Shea's motion to compel these documents.

### B. BRI's E-mails Relating to Valuation

Shea also seeks to compel certain emails between BRI and its counsel about the Acacia transaction. (ECF No. 143 at PAGEID# 6634.) BRI identified these e-mails on its privilege log (specifically, item nos. 6-14, 18, 29-55, 81-87, 95-97, and 104-107). These e-mails consist of communications between BRI and its outside counsel regarding the Acacia deal. As described on the privilege log, these items fall squarely within the coverage of the attorney-client privilege. Shea, however, says that these e-mails "may be discoverable, depending on what they contain" and therefore asks the Court to review them *in camera*.

Shea has presented no basis other than speculation to support the notion that the e-mail communications are discoverable. Without more, the Court sees no reason to inspect the documents *in camera*. *See, e.g., Konica Minolta Bus. Solutions, USA, Inc. v. Allied Office*

*Prods., Inc.*, No. 2:06-cv-71, 2010 U.S. Dist. LEXIS 50151, at *7 (S.D. Ohio Apr. 29, 2010) ("A party moving for an in camera inspection must make a factual showing adequate to support a good faith belief that the review will uncover unprivileged documents.").

### III.     Conclusion

For the reasons above, the Court **GRANTS IN PART AND DENIES IN PART** Shea's motion to compel.  (ECF No. 143.)  The Court hereby **ORDERS** BRI to produce to Shea the six spreadsheets identified on pages 7 and 8 of its October 30, 2012 privilege log.  The Court **DENIES** Shea's motion in all other respects.

**IT IS SO ORDERED.**

> **/s/ Gregory L. Frost**
> **GREGORY L. FROST**
> **UNITED STATES DISTRICT JUDGE**